## THE COMMONWEALTH *against* THE HUNTINGDON BANK.

The act of the 21st of April, 1814, which exacts a duty of eight per cent. upon the amount of dividends declared by any bank, provides, that upon the failure of the bank to pay the same to the state treasurer, within a given period, he shall proclaim the charter of such bank to be forfeited. *Held*, That such proclamation having been made, and the charter forfeited, will not preclude the state from recovering in an action, the duty of eight per cent. also.

Error to the Special Court of Common Pleas of *Huntingdon* county.

This was an action on the case brought by the Commonwealth to recover from the *Huntingdon* Bank, eight per cent., the state tax, upon the dividend declared by the said bank, for the year ending the first Monday of November, 1821.

The bank was incorporated by the act of the 21st of March, 1814, and continued to do business till December, 1821. On the first Monday of November, 1821, the bank declared a dividend on its capital stock of $2846 62; and on the 24th of November, 1821, remitted and tendered to the state treasurer, the sum of $227 73, in notes of the bank, which he refused to accept, because the said bank was then not paying specie for its notes. On the 30th of December, 1821, the state treasurer officially declared the charter of the said bank forfeited, because of the non-payment of the state tax. The bank never afterwards acted under its charter.

Upon this state of facts the court below was of opinion, That the state, having exacted the forfeiture of the charter, was not entitled to recover the money also; and rendered a judgment for the defendant, which was here assigned for error.

*Blanchard* for plaintiff in error.

The eight per cent. which the act of the 21st of April, 1814, section 10 provides, shall be paid to the state, is a duty payable by the bank for the privilege of banking; and the provision in the act, that the charter shall be forfeited in case of non-payment, does not take away the common law remedy, to recover that which the bank, by the acceptance of its charter, contracted to pay.

The offer of their own notes in payment was after the passage of the act of the 27th of January, 1819, which prohibited the treasurer from receiving the notes of any bank which did not pay specie. But if it was a legal tender, yet it was not continued.

*Potter* for defendant in error.

The Commonwealth had an election, either to exact the forfeiture

(The Commonwealth *v.* The Huntingdon Bank.)

or require the money; and having made the election, they could not pursue any other course. It was evidently not the intention of the legislature to resort to a court of law; but to compel the payment by a penalty. There is no provision in the act authorizing a suit to be brought.

The court was of opinion that the judgment of the court below was erroneous, and therefore reversed it, and entered a judgment for the plaintiff.

Judgment reversed, and judgment entered for the plaintiff.

---

## LODGE *against* SIMONTON.

Whatever puts a party upon inquiry amounts to notice, provided that inquiry became a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

APPEAL from the Circuit Court of *Northumberland* county, held by *Gibson, Chief Justice.*

This was an action of ejectment, in which the heirs of *Jonathan Lodge,* deceased, were plaintiffs and *Robert Simonton,* was defendant.

Previously to 1770, *Samuel Hunter* and *Jonathan Lodge,* were the owners of three applications for three hundred acres each, in the names of *Hunter, Spencer* and *Popjay.* In that year surveys were made upon these applications, and afterwards re-surveys were made, and the location of one or all of them changed, so as that a body of land of twelve hundred acres, was included within the surveys. This it appeared was done for the purpose of preventing the location of any other application or warrant upon any part of these twelve hundred acres, so that *Hunter* and *Lodge* might appropriate the whole to themselves. In 1773, they obtained a warrant in the name of *Gailey* for three hundred acres, which was executed in the same year by *Charles Lukens,* and located within the bounds of the twelve hundred acres. Another survey was made upon this warrant in 1790 which located it upon a different tract of land, but still within the twelve hundred acres. This survey was made by *Samuel Hunter's* executors.

56